IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-01787-JLK

LORI L. LASKE, on behalf of D.F., a minor child,
Substitute party for SANDRA L.O. FITZGERALD, deceased,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

___

ORDER
___

KANE, J.

    Sandra Fitzgerald filed her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) in April 2011. After the initial denial of Fitzgerald's applications, an administrative law judge (ALJ) held a hearing at her request in January 2012. The ALJ found that Fitzgerald was not disabled, and Fitzgerald sought review of the decision by the Social Security Appeals Council. Fitzgerald passed away in June 2013, and her child, D.F. replaced her as the substitute party for the DIB claim.[1] (R. at 104.) Lori Laske, the conservator for D.F., has pursued the claim on his behalf. The Appeals Council ultimately vacated the ALJ's decision regarding Fitzgerald's DIB claim due to an inaudible hearing recording. On remand, the ALJ held an additional hearing in February 2015 and again concluded Fitzgerald had not been disabled. Laske requested that the Appeals Council review that decision, but it declined to do so.

---

[1] Since there was no person entitled to receive any SSI underpayment on behalf of Fitzgerald, her SSI claim extinguished upon her death. *See* 20 C.F.R. § 416.542(b).

She now appeals the denial of Fitzgerald's DIB claim pursuant to 42 U.S.C. 405(g).[2] Laske argues on appeal that the ALJ (1) did not have valid reasons for rejecting the opinion of one of Fitzgerald's treating sources as to her physical limitations, (2) did not have valid reasons for giving the opinion of a consultative examiner more weight than he gave that of a treating source, and (3) improperly rejected another treating source's opinion that Fitzgerald was disabled. Because I find that the ALJ's decision is supported by substantial evidence and any error in applying the proper standards is harmless, I AFFIRM.

## I. Legal Standard

The exclusive questions for review on a Social Security appeal are whether there is substantial evidence supporting the final decision of the Commissioner and whether the correct legal standards were applied by the ALJ. 42 U.S.C. § 405(g); *see Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir.1992). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014) (internal quotation marks omitted). In reviewing the decision of the Commissioner, I cannot substitute my judgment for that of the ALJ or reweigh the evidence. *Id.* (citation omitted).

To qualify for DIB under 42 U.S.C. § 423(a), a claimant must, among other requirements,

---

[2]Laske filed the Petition in this case in August 2015. After the appeal was fully briefed, the case was assigned to another judge of this court. Due to the press of court business, the case was reassigned to me in August 2016. All administrative prerequisites for appeal have been satisfied, and jurisdiction is proper under 42 U.S.C. 405(g). The issues are clearly presented in the briefs,

be found to be under a disability while insured for disability benefits. A claimant can only be found to be disabled "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). A claimant's disability must have lasted or be expected to last for at least 12 months. *Id.* § 423(d)(1)(A). In determining whether a claimant is disabled, the ALJ must follow the five-step sequential analysis set forth in § 404.1520(a)(4) of Title 20 of the Code of Federal Regulations.[3]

## II. Background[4]

Sandra Fitzgerald suffered from fibromyalgia, an autoimmune disease, scleroderma, Sjögren's syndrome, spine and disc degeneration, bone spurs and arthritis. She was 47 years old

---

and I have determined that oral argument would not be of material assistance.

[3] At step one of the sequential protocol, the ALJ must determine that the claimant is not engaged in substantial gainful activity. 20 C.F.R. § 404.1520(4)(i). If the claimant is not, then the ALJ must determine at step two that the claimant has a medically determinable impairment that is severe. *Id.* § 404.1520(4)(ii). At step three, the ALJ considers whether the claimant's impairment meets or is equivalent to one of the listed impairments in Appendix 1 of Title 20 of the Code of Federal Regulations, Part 404, Subpart P. If the claimant's impairment meets or equals one of these listed impairments, the analysis ends and the ALJ will find the claimant is disabled. *Id.* § 404.1520(a)(4)(iii). Otherwise, the analysis continues to step four, where the ALJ must determine the claimant's residual functional capacity (RFC). *Id.* § 404.1520(a)(4)(iv). Based on the claimant's RFC, the ALJ must conclude that the claimant cannot perform any of her past relevant work (PRW) or the claimant will be found to be not disabled. *Id.* Lastly, at step five, the Commissioner is responsible for providing evidence that other work exists in significant numbers in the economy and that the claimant can perform such work given her RFC, age, education, and work experience. *Id.* §§ 404.1520(a)(4)(v), 404.1520(g). If the Commissioner carries her burden, the claimant is not disabled, but if the claimant is found unable to do other work available in the economy, she is disabled. *Id.* § 404.1520(a)(4)(v). If the ALJ finds at any step that the claimant is not disabled, the process need go no further. *Id.* § 404.1520(4).

[4] It is important to note that no claim or assertion is made and there is nothing in the record showing that Fitzgerald died as a result of her impairments described in this Order. Her death certificate reflects that her cause of death stated was a pulmonary thromboembolism from a deep vein thrombosis. (R. at 228.)

at the time of her alleged disability onset in March 2009. (R. at 41.) She had a college degree and had been employed full-time and was still employed part-time as an addictions counselor. (R. at 247.)

A. Medical Evidence

The record contains Fitzgerald's years of medical records from Valley-Wide Health Systems, where she received treatment from multiple acceptable and non-acceptable medical sources for her chronic sinus issues, pain, depression, and anxiety, among other ailments. In October of 2011, a family nurse practitioner completed a Statement of Findings for the Alamosa County Department of Social Services, stating that Fitzgerald was unable to engage in any occupation or training at the time. (R. at 526.) The Statement does not include any limitations to support the assertion, and Fitzgerald was actually working part-time at that point. (R. at 305.)

After Fitzgerald applied for DIB, she was referred by a medical source at Valley-Wide to the Southern Colorado Clinic, where she saw physician's assistant (PA) Deborah Kaufmann twice in 2011 and Dr. Patrick Timms twice in 2012 for further treatment of her undifferentiated connective tissue disease, fibromyalgia, and Sjögren's syndrome. (R. at 532-543.) At her second visit, PA Kaufman reviewed Fitzgerald's lab results showing a positive antinuclear antibody test. (R. at 539.) She noted that, upon examination, Fitzgerald's joints had full range of motion without swelling or tenderness, but that she had 18 of 18 soft tissue tender points associated with fibromyalgia. Dr. Timms's later examination similarly found Fitzgerald to have "soft tissue tender points in the paracervical, parathoracic and paralumbar regions." (R. at 532.) Three months after his second visit with Fitzgerald, Dr. Timms completed a form listing her limitations as: lifting or carrying 10 pounds for up to one-third of an eight-hour work day, sitting only 15 to 20 minutes at a time and for one and a half hours in an eight-hour workday, standing or walking

4

only 15 to 20 minutes at a time and for one and a half hours in an eight-hour work day, lying down to rest every two hours for thirty minutes, never handling or fingering, and rarely reaching. (R. at 572-73.) Dr. Timms opined that Fitzgerald's impairments had necessitated that level of restriction since 2011. (R. at 573.)

Dr. Marshall Meier performed a consultative examination on Fitzgerald in late 2011 to clarify the nature and severity of her ailments. (R. at 508-511.) He noted her stated pain levels in the knees, shoulders, spine, and neck. (R. at 508.) He observed her walking with a normal gait and that she was able to get on and off the examination table with little difficulty. (R. at 509.) He found full muscular strength and sensation in the bilateral upper and lower extremities. (R. at 510.) Dr. Meier diagnosed muscle and joint pain of an undetermined cause but stated it was most likely related to her undifferentiated connective tissue disease. (R. at 511.) Ultimately, he concluded that Fitzgerald's condition did not impose any limitations lasting for twelve or more months and that she had no postural, manipulative, or workplace environmental limitations. (*Id.*)

In 2012, Fitzgerald began seeing Dr. Claud Bays at San Luis Valley Physician Services. Dr. Bays treated Fitzgerald for about a year, and in May 2013, opined that she could not be gainfully employed at that time because of her chronic musculoskeletal conditions and chronic pain. (R. at 580.) Roberta Tesar, a licensed clinical social worker (LCSW) who worked at the medical center with Dr. Bays, wrote a letter on Fitzgerald's behalf stating that she had depressive disorder due to a general medical condition and that she has had and may always have a very difficult time maintaining employment. (R. at 531.)

B. The ALJ's Decision

Based on the medical evidence above, the Administrative Law Judge found that Fitzgerald had a medically determinable impairment of fibromyalgia that was severe, because it

significantly limited her ability to perform basic work activities. (R. at 15.) The ALJ determined that her other impairments; including her weight, autoimmune disease, Sjörgen's syndrome, sinusitis, mild degenerative disc disease, and spine spurs; had no more than a minimal effect on her ability to work and, therefore, were non-severe impairments. (*Id.*) He also concluded that Fitzgerald's arthritis was not a medically determinable impairment and her depression and anxiety resolved within 12 months of onset. (*Id.*) The ALJ then found that Fitzgerald's fibromyalgia did not equal the severity of any analogous listing in Appendix 1 of Title 20 C.F.R. Part 404, Supbart P.

In his review of the medical evidence and treatment records, the Administrative Law Judge meticulously described Fitzgerald's contacts with medical sources, the medications prescribed for her, the diagnostic impressions given based on observation, and the tests that were performed and evaluated. He carefully compared the medical sources' opinions and concluded the opinion of Dr. Meier was entitled to the greatest weight, because he examined Fitzgerald and his opinion was supported by the evidence. The ALJ gave little weight to the statement of Dr. Bays that Fitzgerald could not be gainfully employed, but he did not reject his opinion entirely. The Administrative Law Judge allotted no weight to the opinions of Dr. Timms or LCSW Tesar. He reasoned that Dr. Timms saw Fitzgerald only twice, his assessment was not supported by his examination findings, and he did not present as detailed an explanation as did Dr. Meier. The ALJ also found Dr. Timms's assessment to be markedly inconsistent with Fitzgerald's own testimony about her activities of daily living and her receipt of unemployment benefits. LCSW Tesar's opinion was rejected because, among other stated reasons, it was not accompanied by any supporting documentation and was patently inconsistent with the medical treatment records.

Because Fitzgerald's prior testimony was not recorded properly and she died before the

second hearing, the ALJ accepted the notes of claimant's attorney concerning her testimony at the first hearing. The ALJ also recounted the information Fitzgerald had previously provided in her Function Reports. (R. at 255-62, 264-71.) The ALJ found Fitzgerald's statements as to the intensity, persistence, and limiting effects of her symptoms not to be fully credible in light of her daily activities and the lack of support in the objective medical evidence. (R. at 18.)

As a result of his findings regarding the medical evidence and Fitzgerald's credibility, the ALJ determined she had the residual functional capacity (RFC) to perform the full range of light work and lift or carry ten pounds frequently and 20 pounds occasionally. (R. at 16.) The ALJ then compared that RFC to Fitzgerald's description of the physical requirements of her past relevant work as a counselor and found that she was capable of performing that work both as it was generally performed in the national economy[5] and as the claimant described performing it. (R. at 23.) Consequently, he concluded that Fitzgerald was not disabled. (*Id.*)

### III. Analysis

Under the Social Security regulations, a treating source is defined as a:

physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]. Generally, we will consider that [the claimant has] an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that [the claimant] see[s], or ha[s] seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s).

20 C.F.R. § 404.1502. The opinions of treating sources are generally entitled to more weight. *Id.*

---

[5]The ALJ's basis for determining how Fitzgerald's PRW was usually performed in the national economy is unclear. Nevertheless, the ALJ only needed to find that she retained the capacity to perform the functional demands and job duties of her past relevant work as she actually performed in order to conclude that she was not disabled. *See* SSR 82-61, 1982 WL 31387, at *1-2.

§ 404.1527(c)(2). In deciding whether to give treating-source opinions "controlling weight," an ALJ must first consider whether the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 404.1527(c)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). And, if it is, then the ALJ must find that the opinion is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). When an ALJ determines that a treating source's opinion is either not well-supported or inconsistent with other substantial evidence, then he or she must consider six factors to establish the amount of weight to accord the opinion. *Id.* § 404.1527. The ALJ is required to use the same factors to evaluate the medical opinions of non-treating sources as well. *Id.* The factors are: (1) the examining relationship between the physician and the applicant; (2) the length, nature, and extent of the treatment relationship; (3) the evidentiary support for the opinion; (4) the consistency of the opinion with the record as a whole; (5) the medical source's specialty; and (6) other factors, such as the source's understanding of Social Security disability programs and the extent to which the source is familiar with other information in the record. *Id.*

A. Opinion of Dr. Timms

Dr. Timms had a very limited treatment relationship with Fitzgerald but provided significant limitations for her, including that she would need to lie down for 30 minutes every two hours. (R. at 572-73.) The ALJ gave no weight to this opinion, because Dr. Timms "only saw the claimant twice and his assessment [was] not supported by the findings on examination in his own treatment records or a detailed explanation." (R. at 22.) The ALJ additionally reasoned that "Dr. Timms's assessment [was] markedly inconsistent with the claimant's activities of daily living, the claimant's acknowledgement she was receiving unemployment compensation, and the opinion of Dr. Meier." (*Id.*)

8

*Treating Source Definition*

"When [a] treating source has seen [the claimant] a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment," the source's opinion is entitled to more weight than if it were from a nontreating source. 20 C.F.R. § 404.1527(c)(2)(i); *see also Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) (stating that the treating physician relationship is one "of both duration and frequency"). A "longstanding treatment relationship provides some assurance that the opinion has been formed for purposes of treatment and not simply to facilitate the obtaining of benefits." *Id.* at 762-63. A medical source's opinion is not, on the other hand, "entitled to controlling weight on the basis of a fleeting relationship." *Id.* at 763. In this instance, Dr. Timms had not seen Fitzgerald a sufficient number of times or for long enough to obtain a longitudinal picture of her impairment, and it is not clear that her relationship with Dr. Timms was not simply to facilitate the obtaining of benefits. In *Doyal v. Barnhart*, 331 F.3d at 762, a panel of the Tenth Circuit determined that two visits with a medical source in seven years did not constitute a treating relationship. The Court held that the ALJ, therefore, was not required to give the source's opinion controlling weight or to provide specific reasons for not giving it controlling weight. *Id.* The facts of the instant case are materially similar to those in *Doyal*; thus, it was proper for the ALJ to find that Dr. Timms's opinion was not entitled to controlling weight.

*Well-supported by Medically Acceptable Diagnostic Techniques*

Even if Dr. Timms should have been deemed a treating source, the ALJ properly found that his opinion regarding her limitations was not well-supported by medically acceptable diagnostic techniques. Laske argues that Dr. Timms's finding of tender points in Fitzgerald's paracervical, parathoracic and paralumbar regions is sufficient to support the limitations he

9

provided. That examination finding might support the conclusion that Laske had fibromyalgia,[6] but it does not substantiate the strict limitations he gave her three months after the fact. *See Tarpley v. Colvin*, 601 F. App'x 641, 643 (10th Cir. 2015) (unpublished) (holding that an ALJ's rejection of the treating sources' opinions regarding the claimant's limitations from her fibromyalgia was proper when very little in the medical records supported the physical limitations imposed by the sources). Dr. Timms does not appear to have asked Fitzgerald about her capabilities or to have actually tested her strength, range of motion, or stamina. His physician's assistant noted that, except for her shoulders, Fitzgerald had full range of motion in all of her joints and spine. Further, neither source documented Fitzgerald experiencing weakness or difficulty moving. *See id.* ("[A]s the ALJ found, very little in [the treating sources'] medical records suggests that [the claimant] is as disabled as either [of the treating sources] claimed. To the contrary, examination records suggest that [the claimant] enjoys a full range of motion in her joints, possesses normal strength, and walks and moves without much difficulty."). Dr. Timms's reports simply lack any diagnostic techniques supporting the limitations he provided, which is a valid reason for the ALJ not to accord controlling weight to his opinion. *See Langley v. Barnhart*, 373 F.3d 1116, 1120 (10th Cir. 2004) (holding it was proper to give less than controlling weight to a treating source who "failed to reference any medical reports that supported his conclusions or indicate how his treatment of claimant supported his conclusions").

---

[6]Social Security Ruling 12-2p discusses the criteria for finding a medically determinable impairment of fibromyalgia. According to the SSR, a claimant must have pain in all quadrants of the body, must have at least 11out of 18 positive tender points, and must have had other disorders that could cause the symptoms or signs excluded. 2012 WL 3104869, *2-3. It is not clear from Dr. Timms's medical reports that he examined all 18 tender-point sites or considered the other two requirements.

*Weight under the Factors*

Since the ALJ determined that Dr. Timms's opinion was not entitled to controlling weight, he then was required to evaluate the opinion based on the factors in 20 C.F.R. § 404.1527. The ALJ considered the first four factors: Dr. Timms's examining relationship with Fitzgerald; the length, nature, and extent of their relationship; the evidentiary support for his opinion; and the consistency of the opinion with the record as a whole and found them to require rejection of Dr. Timms's opinion altogether.[7] Specifically, the ALJ found that Fitzgerald's treatment relationship with Dr. Timms was very limited, the restrictions he provided were not supported by his treatment records or a detailed explanation, and his opinion was not consistent with the other evidence in the record, namely Fitzgerald's daily activities, her receipt of unemployment benefits, and the opinion of Dr. Meier.

As explained above, Dr. Timms's limited relationship with Fitzgerald and the lack of support for his opinion are valid reasons for discounting it. Laske argues that the ALJ mischaracterized Fitzgerald's daily activities and part-time work, so his determination that Dr. Timms's opinion was inconsistent with those activities is improper. Citing *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993), she correctly asserts that minimal daily activities are not substantial evidence that a claimant is capable of substantial gainful activity. However, the ALJ does not use her daily activities as proof that she can work; he uses them to challenge the reliability of Dr. Timms's opinion. Dr. Timms limited Fitzgerald to never handling or fingering,[8]

---

[7]"That the ALJ did not explicitly discuss all of the § 404.1527(d) factors for each of the medical opinions before him does not prevent this court from according his decision meaningful review." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). The ALJ must only provide good reasons for the weight he gives to the treating sources' opinions, *id.*, which entails applying the applicable factors and performing analysis specific to the facts of the claim.

[8]Handling is seizing, holding, grasping, turning, or otherwise working primarily with the whole

11

when many of her daily activities would necessarily involve handling and fingering. Additionally, Dr. Timms opined that Fitzgerald could only sit or stand 15 to 20 minutes at a time, yet she could drive, grocery shop, and prepare simple meals. The ALJ's portrayal of Fitzgerald's daily activities was accurate enough to reveal the inconsistencies between her activities and Dr. Timms's opinion. The ALJ, thus, appropriately found that Dr. Timms's opinion is not consistent with the other evidence in the record.[9]

*Weight Compared to Dr. Meier's Opinion*

Laske also argues that the ALJ erred in according more weight to Dr. Meier's opinion than to that of Dr. Timms. Laske attempts to reduce the difference between the opinions of Dr. Meier and Dr. Timms to the number of visits each had with Fitzgerald, assuming more visits equals greater insight. Again, however, Dr. Timms's report only documents minimal physical examination, while Dr. Meier's is much more thorough. The results of Dr. Meier's examination, with which Dr. Timms's opinion is in conflict, are essentially objective, while Dr. Timms's opinion regarding Fitzgerald's limitations is excessively subjective. Weighing the applicable factors, the ALJ found Dr. Meier's opinion more consistent with the record as a whole and, in particular, the generally mild findings on examination and the objective test results. It is curious that the ALJ found Fitzgerald to have some limitations, even though he gave great weight to the

---

hand or hands. SSR 85-15, 1985 WL 56857, at *7. Fingering "involves picking, pinching, or otherwise working primarily with the fingers." *Id.*
[9]Laske additionally contends that Fitzgerald's receipt of unemployment benefits only sheds light on her credibility and not on the accuracy of Dr. Timms's opinion. Without testimony from Fitzgerald, I find the ALJ's inference that, by receiving unemployment compensation, Fitzgerald acknowledged that she was not disabled to be unsupported. *Cf. Pickup v. Colvin*, 606 F. App'x 430, 433 (10th Cir. 2015) (unpublished). Her receipt of unemployment benefits also is not relevant to the accuracy of Dr. Timms's opinion, since the opinion was based on her condition well after she was reportedly receiving the benefits. Nonetheless, the ALJ's other given reasons adequately justify his rejection of Dr. Timms's opinion.

opinion of Dr. Meier that she had none. Nevertheless, "if a medical opinion adverse to the claimant has properly been given substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

Although the opinion of a medical source who treats the claimant is usually entitled to deference, in the absence of both duration and frequency of contact and treatment by the source, the basis for this preference is lacking. The rationale is equally undermined when the opinion of the treating source is not well-supported by medically acceptable diagnostic techniques. When two examining source opinions are evaluated on equal footing, the one that provides greater support for its conclusions and is more consistent with the record as a whole should generally be accorded more weight. Regardless, it is not my role to reweigh the evidence or substitute my judgment for that of the ALJ. Here, he applied the proper standard in weighing the opinions of Dr. Timms and Dr. Meier, and his findings are supported by substantial evidence.

B.  Opinion of Dr. Bays

The ALJ gave little weight to the statement of Dr. Bays that Fitzgerald could not be gainfully employed in May 2013, because "whether an individual can perform substantial gainful activity is reserved to the Commissioner of Social Security." (R. at 21.) Social Security Ruling 96-5p provides that, even though treating source opinions on issues reserved to the Commissioner are not entitled to controlling weight, "adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner." 1996 WL 374183, at *2; *see also* SSR 03-2p, 2003 WL 22399117, at *8 n.3. Dr. Bays's statement, however, is not a true medical opinion, as it does not contain his "judgment about the nature and severity of [the claimant's] physical limitations, or

any information about what activities [she] could still perform." *Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008). In addition, the ALJ listed many of Dr. Bays's examination observations and stated "again not findings on examination that seem consisted with a disabling level of severity." (R. at 21.) The ALJ discounted Dr. Bays's statement not only because it was on an issue reserved to the Commissioner, but also because it was unsupported and inconsistent with his own examination findings. Moreover, even if the ALJ should have fully explained the weight he accorded Dr. Bays's statement under the § 404.1527 factors, not doing so was harmless error. The ALJ rejected the analogous opinion of Dr. Timms, because it also was not consistent with the other substantial evidence in the record and was not well-supported by a detailed explanation or diagnostic testing of Fitzgerald's physical limitations. Viewing the record as a whole, it is clear the ALJ weighed Dr. Bays's opinion just as he did that of Dr. Timms, and any error in not documenting his doing so is harmless. *See Lately v. Colvin*, 560 F. App'x 751, 754 (10th Cir. 2014) (holding that an ALJ's failure to expressly state or explain the weight assigned to a medical opinion was harmless when it addressed the issue of disability and was nearly identical to another opinion that was given no weight).

## IV. Conclusion

I, therefore, AFFIRM the determination of the Commissioner through the ALJ that Fitzgerald was not disabled.

DATED this 13th day of December, 2016.

_____
JOHN L. KANE
SENIOR U.S. DISTRICT JUDGE